IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| A.V. AVINGTON JR., | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 24-cv-00410-SH |
| INDEPENDENT SCHOOL DISTRICT | ) | |
| NO. 1 OF TULSA COUNTY, aka TULSA | ) | |
| PUBLIC SCHOOLS | ) | |
| | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant's partial motion to dismiss.[1] The primary disputed issue is whether Plaintiff was required to administratively exhaust his association discrimination claim under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111–12117. The Court finds exhaustion was required and dismisses the claim with prejudice.

*Factual Background*

Plaintiff A.V. Avington Jr. ("Avington") asserts claims against Defendant Independent School District No. 1 of Tulsa County, Oklahoma a/k/a Tulsa Public Schools ("TPS"). The Court derives the following factual allegations from the complaint (ECF No. 2) and assumes they are true for purposes of this motion. As noted below (section II(A), *infra*), the Court also considers the contract documents Avington executed in connection with his employment at TPS (ECF No. 2 at Ex. A–Ex. D), the charge of discrimination filed by Avington with the Equal Employment Opportunity Commission ("EEOC") (*id.* at Ex. E), and the right to sue letter issued by the EEOC to Avington (*id.* at Ex. G).

---

[1] The parties have consented to the jurisdiction of a U.S. Magistrate Judge for all purposes under 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(a). (ECF No. 12.)

In November 2022, Avington, a black male, was hired by Greenwood Leadership Academy ("GLA") as an emergency certified school counselor for the remainder of the 2022–2023 academic year. (*Id.* ¶¶ 9, 17; *see also id.* at Ex. C (Teacher Apprentice Acknowledgment).) GLA is a primarily black elementary school located in a historically black neighborhood that is under the "operational control" of TPS. (*Id.* ¶¶ 9, 17.)

In January 2023, Avington met with ML, a fifth-grade black student who could "barely read," despite attending GLA since kindergarten. (*Id.* ¶¶ 11, 15.) ML told Avington that she was regularly bullied because of her illiteracy and that she was worried the bullying would worsen once she started middle school the following year. (*Id.* ¶ 12.) After this meeting, Avington researched ML's academic record and learned that: (1) ML's grandmother requested GLA help ML several times; (2) ML had never been evaluated for a learning disability; and, as a result, (3) ML had never been recommended for learning accommodations under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–796*l*, or the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1482. (*Id.* ¶¶ 11, 13.) Avington then began the administrative process to have ML evaluated for a learning disability in the hope that an IDEA Individualized Education Plan would be developed to help ML learn to read. (*Id.* ¶ 14.)

From Avington's initial January 2023 meeting with ML to when he followed up with school officials on April 7, 2023, GLA did not take any action on ML's behalf. (*Id.* ¶ 15.) Avington repeatedly asked for permission to address the school board to bring awareness to ML's situation. (*Id.*) Avington was granted permission at the May 15, 2023, TPS board meeting, during which he was critical of GLA's treatment of ML. (*Id.* ¶¶ 15, 17.) He was subsequently interviewed by a local news channel over his comments. (*Id.* ¶ 15.)

The day of the meeting, TPS notified Avington that his contract would not be renewed. (*Id.* ¶ 19.) Prior to this, Avington became "subject to a series of negative write-ups." (*Id.* ¶ 18.) He further experienced personal intimidation and was accused of having an affair with a TPS faculty member. (*Id.*) Avington alleges these "retaliatory efforts" were done to lay the groundwork for his termination and to create doubt surrounding his criticisms. (*Id.*) Avington further alleges that, during this time, TPS was involved in a "public stand-off" with the Oklahoma State Department of Education and did not want the negative publicity associated with a black counselor raising a "civil rights alarm" about a black student's illiteracy at a primarily black school in a historically black neighborhood. (*Id.* at 1 & ¶¶ 17–18.)

On June 8, 2023, Avington filed a charge of discrimination against TPS with the EEOC. (*Id.* ¶ 20; *see also* ECF No. 2-1 at Ex. E (charge form).) The charge form had a box for "DISCRIMINATION BASED ON," in which Avington selected: "Age, Genetic Information, Race, Religion, Retaliation, Sex." (ECF No. 2-1 at Ex. E.) When asked what "THE PARTICULARS ARE" of his claim, Avington stated the following,

> I began my employment on or about November 28, 2022, as an Emergency Certified School Counselor. At all times I performed my duties in a satisfactory manner. During my employment I was referred to as religious disparaging titles after requesting to be called by my name. I was also falsely accused of participating in sexually inappropriate activities with my immediate supervisor.
>
> Subsequently, despite my good performance, on May 25, 2023,[2] my employment was terminated because of whistle blowing.
>
> I believe that I have been discriminated against because of my race, Black African American, my religion, Christian, and my age (67) in violation of Title VII of the Civil Rights Act of 1964, and in violation of the Age Discrimination in Employment Act of 1967, and in retaliation due to my

---

[2] The complaint alleges Avington was "terminated" on May 15, 2023, not May 25, 2023. (ECF No. 2 ¶ 19.) This difference is immaterial to the disposition of TPS's motion.

3

>disclosing information to the Tulsa Public School Board at TPS of the issue that a student, who spent 7 years in elementary school, and could not read.

(*Id.*) Avington received a right to sue letter dated June 4, 2024. (ECF No. 2 ¶ 21.)

### *Procedural Background*

Avington brought the current lawsuit on September 3, 2024. From the face of the complaint, he appears to assert three claims against TPS: (1) a First Amendment claim under 42 U.S.C. § 1983 (*id.* ¶¶ 3, 23–24); (2) a wrongful termination claim based on racial and religious discrimination against himself under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (*id.* ¶ 25); and (3) an association discrimination claim based on ML's purported learning disability under ADA Title I (*id.* ¶ 26).[3] Avington seeks compensatory and punitive damages, and a court order requiring he be reinstated as a counselor at GLA. (*Id.* at 8–9.)

TPS has moved to dismiss (1) Avington's ADA claim for failure to exhaust administrative remedies; and (2) his request for punitive damages as unrecoverable against a public school district under § 1983, Title VII, or the ADA. (ECF No. 8 at 2–5.)

Avington concedes punitive damages are not available against TPS under state and federal law (ECF No. 14 at 1), and the Court will strike his request for such damages. Avington also does not dispute that he failed to exhaust administrative remedies under Title I of the ADA, nor does he appear to dispute that Title I requires such exhaustion. Instead, he argues that exhaustion is irrelevant to an association discrimination claim brought under the Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (*Id.* at 3–4.)

---

[3] Avington refers to this third claim as one for "associative" or "associational" discrimination. (*See* ECF No. 2 at 1 & ¶ 26.) For consistency, the Court will use the term "association discrimination."

*Analysis*

I.   **Section 504 of the Rehabilitation Act**

The Court will not address Avington's exhaustion arguments under the Rehabilitation Act, because the complaint does not state a claim under that Act.[4]

While the complaint recites various legal theories for Avington's claims, the Rehabilitation Act is not one of them. Instead, the complaint only mentions the Act in passing when noting that ML had not been recommended for accommodations. (ECF No. 2 ¶ 11.) As such, it is not surprising that TPS's motion does not address whether Avington may assert an association discrimination claim under the Rehabilitation Act or whether exhaustion is required for such a claim. Even so, the Court will not dismiss a complaint for an "imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Here, however, even if the Court looks only to the factual allegations, Avington has failed to state a claim under the Rehabilitation Act. Generally, the standards used to determine an employment claim under Section 504 of the Act are the same as those applied by Title I of the ADA. 29 U.S.C. § 794(d). But this does not mean that the elements are coextensive. As pertinent here, Section 504 applies to discrimination committed by "any program or activity receiving Federal financial assistance . . . ." *Id.* § 794(a). The Tenth Circuit has made it clear that whether "the program or activity in

---

[4] Avington's response brief also makes a passing reference to Title II of the ADA, 42 U.S.C. §§ 12131–12165. (ECF No. 14 at 4.) Avington does not, however, argue that he has stated a claim under Title II, and the Court can discern no such claim from the allegations in the complaint. *See, e.g., Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (listing the elements for a claim under 42 U.S.C. § 12132). In any event, the statutory framework "strongly suggests that Title I, not Title II, is the proper tool for pursuing employment discrimination claims." *Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1309 (10th Cir. 2012).

5

question receives federal financial assistance" is an element of a Section 504 claim. *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011). Avington's complaint contains no such allegation, and he has failed to state a claim under Section 504 of the Act. The Court, therefore, will not address his exhaustion arguments.

If Avington later decides to assert a claim under the Rehabilitation Act (or Title II of the ADA or any other statute), he may file a motion to amend within the appropriate time.

## II.     Title I of the ADA

The Court will now turn to Avington's ADA claim.

### A.     Standard of Review

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(6), arguing that Avington fails to state a claim upon which relief may be granted. To survive such a motion, "a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). All such reasonable inferences are resolved in the plaintiff's favor. *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations and footnotes omitted). A motion to dismiss is properly granted when a complaint provides no "more than labels and conclusions" or a "formulaic recitation" of the elements. *Id.* at 555.

Where a motion to dismiss is based on an affirmative defense,[5] it may be properly granted only "when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

In assessing the allegations in a complaint, the Court looks not only to the complaint itself; it may also "consider documents attached to or referenced in the complaint if they 'are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Brokers' Choice*, 861 F.3d at 1103 (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)). Here, the Court considers Avington's EEOC charge of discrimination and the contract documents Avington executed in connection with his employment at TPS. (*See id.* at Ex. A–Ex. E). These documents are referenced in the complaint, central to Avington's claim, and their authenticity is not disputed. *See generally Mobley v. Dillon Cos.*, 153 F.3d 727 (table), 1998 WL 314589, at *1 (10th Cir. May 29, 1998) (unpublished) (finding court properly considered EEOC charge in ruling on 12(b)(6) motion).[6]

---

[5] The Tenth Circuit has stated that failure to exhaust "merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). Lower courts in this circuit have split over whether this language means that exhaustion is a condition precedent to suit or a true affirmative defense for which the defendant bears the burden. *Compare, e.g., Huffman v. Mirror, Inc.*, 497 F. Supp. 3d 988, 994 (D. Kan. 2020) (treating exhaustion as a condition precedent governed by Rule 9(c)); *Johnson v. Spirit Aerosys., Inc.*, No. 20-CV-00138-GKF-CDL, 2021 WL 6066701, at *5 (N.D. Okla. Mar. 26, 2021) (same), *with Hyman v. N.M. State Univ.*, No. CIV 18-1103, 2020 WL 1514801, at *25 (D.N.M. Mar. 30, 2020) (treating failure to exhaust as an affirmative defense); *Tiger v. Powell*, No. 21-cv-01892, 2022 WL 4182413, at *9 (D. Colo. Sept. 13, 2022) (same), *appeal dismissed*, No. 22-1348, 2022 WL 19475059 (10th Cir. Dec. 6, 2022). The Court need not decide that issue today, because it finds that TPS has shown that the complaint (and its properly considered attachments) admit all the elements of an exhaustion defense.

[6] Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

TPS's EEOC position statement was also attached to Avington's complaint (ECF No. 2 at Ex. F), but it is not relevant to the current motion. The Tenth Circuit has "consistently held, time and again, that the reasonable and likely scope of the investigation is determined by the allegations contained in the <u>Charge</u> itself, rather than the Charge and any responsive documents." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1165 (10th Cir. 2018).

### B.   Association Discrimination under the ADA

Title I of the ADA provides that covered employers shall not "discriminate against a qualified individual[7] on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, or other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). These protections, however, are not solely limited to employees who are themselves disabled. The Act broadly defines the phrase "discriminate against a qualified individual on the basis of disability" to include "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a <u>relationship or association</u>." *Id.* § 12112(b)(4) (emphasis added). Thus, Title I of the ADA protects both (1) disabled employees and (2) non-disabled employees who are associated with a disabled individual. This latter type of discrimination claim is sometimes referred to as "association discrimination." *See, e.g., Bell v. City of Tulsa*, No. CIV 21-0061 JB/CDL, 2024 WL 1018528, at *36 (N.D. Okla. Mar. 8, 2024); *see also Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1081–82 (10th Cir. 1997) (referring to § 12112(b)(4) as the ADA's "association provision").

---

[7] A "qualified individual" is one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

### C. Plaintiff Was Required to Exhaust Administrative Remedies for His Association Discrimination Claim

Avington was required to exhaust administrative remedies for his ADA association discrimination claim.

It is well-established that Title I of the ADA explicitly incorporates the "powers, remedies, and procedures" set forth in Title VII. 42 U.S.C. § 12117(a) (citing 42 U.S.C. §§ 2000e-4–2000e-6 and §§ 2000e-8–2000e-9); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002) ("Congress has directed the EEOC to exercise the same enforcement powers, remedies, and procedures that are set forth in Title VII . . . when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability."). Under Title VII, a plaintiff typically may not bring an action based upon claims that were not part of a timely filed EEOC charge for which he has received a right-to-sue letter. *Lincoln*, 900 F.3d at 1181. The same is true for an ADA Title I claim. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 988 (10th Cir. 2021) (noting ADA Title I plaintiff "must have exhausted her administrative remedies as to that claim before filing suit"). The exhaustion rule "derives from two principal purposes: 1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Sanderson*, 976 F.3d at 1170 (quoting *Smith*, 904 F.3d at 1164) (internal quotation marks omitted). To promote these purposes, a plaintiff's claim in federal court "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Id.* (quoting *Smith*, 904 F.3d at 1164).

As noted above, Avington does not seriously contest that Title I of the ADA requires exhaustion. The closest he gets is noting that Title I "expands ADA protection" to include

9

association discrimination and then asserting that "broadening [the] ADA's protection does not necessarily expand the EEOC's jurisdiction to include every form of associational discrimination." (ECF No. 14 at 3 (citing 42 U.S.C. § 12112(b)(4).) To the extent Avington is arguing that no exhaustion is required for <u>his</u> Title I association discrimination claim, the Court is unpersuaded. First, section 12112(b)(4) did not "expand[] ADA protection"; it has been part of the ADA since its enactment in 1990. *See* Americans with Disabilities Act of 1990, tit. I, § 102(b)(4), Pub. L. No. 101-336, 104 Stat 327 (1990). Second, nothing in the text of Title I's enforcement provision suggests that association discrimination claims concerning employment are exempted from the procedures borrowed from Title VII. Rather, the provision explicitly states that "[t]he . . . procedures set forth in section[] . . . 2000e-5 . . . shall be the . . . procedures this subchapter provides to . . . any person alleging discrimination of the basis of disability in violation of any provision of this chapter . . . ." 42 U.S.C. § 12117(a); *see also id.* § 2000e-5(e)–(f) (outlining the process for filing a charge and the time for filing suit). Here, Avington is alleging adverse employment action under Title I's association discrimination provision after he spoke out against the treatment of an illiterate student. (ECF No. 2 ¶¶ 17, 26.) Avington was required to exhaust his administrative remedies before filing suit.

### D. Plaintiff Failed to Exhaust Administrative Remedies for His ADA Claim

Having determined administrative exhaustion was required, the Court next considers whether it occurred. In making this determination, the Court first looks to the label an employee gave his claim. "The failure to mark a particular box [alleging discrimination] creates a presumption that the charging party is not asserting claims represented by that box," but the presumption may be rebutted "if the text of the charge clearly sets forth the basis of the claim." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th

10

Cir. 2007) (explaining the "charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim"), *overruled on other grounds by Lincoln*, 900 F.3d at 1185–86. "The ultimate question is whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." *Smith*, 904 F.3d at 1164–65 (cleaned up). Because EEOC charges are typically filed by non-attorneys, the Court liberally construes the allegations contained in an EEOC charge. *Id.* at 1166.

As explained above, Avington marked "Age, Genetic Information, Race, Religion, Retaliation, Sex," in the box stating the basis of his discrimination. As such, the Court will presume he only asserted these claims of discrimination unless the text of his charge clearly sets forth another basis. *Jones*, 502 F.3d at 1186. Upon review, the Court finds the particulars of Avington's charge do not rebut this presumption.

### 1. ADA Association Discrimination

Under the ADA, disability discrimination can occur by "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). The prima facie elements of an ADA association discrimination claim are:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;
>
> (2) the plaintiff was subjected to adverse employment action;
>
> (3) the plaintiff was known by his employer at the time to have a relative or associate with a disability;[8] [and]

---

[8] A "disability" means "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . ." *Id.* § 12102(1). "Major life activities" include reading. *Id.* § 12102(2)(A).

> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

*Trujillo v. PacifiCorp*, 524 F.3d 1149, 1154 (10th Cir. 2008) (quoting *Den Hartog*, 129 F.3d at 1085).

### 2. Plaintiff's Charge Does Not Include an Association Discrimination Claim

Avington does not argue that he asserted a disability claim before the EEOC, and the Court agrees he did not.

Even liberally construed, the text of Avington's EEOC charge does not clearly set forth the basis of a disability-related association discrimination claim. Avington's charge form merely alleges that he was terminated in "retaliation" for "disclosing information to the Tulsa Public School Board . . . that a student . . . spent 7 years in elementary school, and could not read." (ECF No. 2-1 at Ex. E.) Avington does not cite the ADA or allege that the student suffered from a disability. In fact, the word "disability" appears nowhere in the charge.

The mere reference to a student's inability to read is not enough to raise a disability-related claim. *See* Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, app., § 1630.2(h) Physical or Mental Impairment ("Environmental, cultural, or economic disadvantages such as poverty, lack of education, or a prison record are not impairments." (emphasis added)); *Morisky v. Broward Cnty.*, 80 F.3d 445, 448 (11th Cir. 1996) (per curiam) ("it does not always follow that someone who is illiterate is necessarily suffering from a physical or mental impairment"); *Smith v. CDCR Educ. Dep't*, No. 20-cv-716, 2021 WL 3737456, at *5 (E.D. Cal. Aug. 24, 2021) ("illiteracy alone does not constitute a disability").

The EEOC would not reasonably be expected to investigate a disability association discrimination claim based on Avington's charge. Plaintiff has failed to exhaust administrative remedies under the ADA, and this claim will be dismissed.

### 3. Plaintiff Cannot Cure His Failure to Exhaust

Avington alleges that he was notified of the non-renewal of his employment on May 15, 2023 (ECF No. 2 ¶ 19), and the time for him to file a charge under the ADA has long-since passed.[9] Avington cannot cure his failure to plead exhaustion under Title I of the ADA, so this dismissal will be with prejudice.

IT IS THEREFORE ORDERED that *Defendant Independent School District No. 1 of Tulsa County's Partial Motion to Dismiss* (ECF No. 8) is GRANTED. Plaintiff's request for punitive damages is STRICKEN. Plaintiff's association discrimination claim under Title I of the ADA is DISMISSED WITH PREJUDICE.

ORDERED this 1st day of May, 2025.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[9] *See* 42 U.S.C. § 12117(a) (noting the procedures set forth in § 2000e-5 apply to persons alleging discrimination on the basis of disability); *id*. § 2000e-5(e)(1) (a charge must be filed within 180 or 300 days after the allegedly unlawful employment practice occurred, depending on whether the proceedings are initially instituted with a State or local agency).