## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| A.V. AVINGTON JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 24-cv-00410-SH |
| INDEPENDENT SCHOOL DISTRICT | ) | |
| NO. 1 OF TULSA COUNTY, aka TULSA | ) | |
| PUBLIC SCHOOLS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

A.V. Avington worked at Tulsa Public Schools for one semester as not-yet-certified school counselor. During that limited time, he amassed multiple poor reviews and was found unqualified for the position by his mentor and principal. In the last month or so of his employment, he also made public statements regarding an illiterate fifth grader at his school. At the end of the semester, his contract expired, and the school chose not to renew it. Avington claims this non-renewal was in retaliation for his exercise of free speech under the First Amendment. Under the undisputed facts, any reasonable jury would find the non-renewal inevitable; that is, the school would have decided not to renew Avington's contract, whatever his speech. The Court will grant summary judgment to the school.

## I.  Procedural Background

Plaintiff A.V. Avington Jr. ("Avington") has brought suit against the Independent School District No. 1 of Tulsa, a/k/a Tulsa Public Schools ("TPS") relating to TPS's decision not to renew his employment in 2023. (Dkt. No. 2.) As the Court has previously

found (Dkt. No. 17 at 4[1]), Avington appears to assert three claims in the complaint: (1) a First Amendment retaliation claim under 42 U.S.C. § 1983 (Dkt. No. 2 at ¶¶ 3, 23–24); (2) a wrongful termination claim based on racial and religious discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17 (*id.* ¶ 25); and (3) an association discrimination claim under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12111–12117 (*id.* ¶ 26).  The Court dismissed Avington's ADA claims in an earlier order (Dkt. No. 17), leaving the First Amendment retaliation claim and the Title VII claims for discovery.  Discovery closed on October 22, 2025 (Dkt. No. 25), and each party filed a motion for summary judgment on November 5, 2025 (Dkt. Nos. 29–30).  Avington's motion—which is not styled as a motion for partial summary judgment—assumes he only has a First Amendment retaliation claim remaining.  (Dkt. No. 30.)  TPS, meanwhile, has moved for summary judgment on this retaliation claim, as well as the Title VII claims for racial and religious discrimination.[2] (Dkt. No. 29.)

## II.    Standard of Review

### A.    Generally

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence in the record is such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under

---

[1] Except where otherwise noted, page numbers refer to those in the court-provided header.

[2] As discussed below,  Avington now disavows any Title VII claims.  (*See* § IV(B), *infra*.)

the governing law . . . ." *Id.* As the court makes this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

When the movant does not bear the burden of proof at trial on a particular issue, it may prevail by showing "a lack of evidence for the nonmovant on an essential element of [their] claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see also* 10A Wright & Miller's Federal Practice & Procedure § 2727.1 (4th ed. 2025) (the "movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence"). That said, the nonmovant need not show "that the dispute as to material facts will be resolved in its favor." 10A Wright & Miller's Federal Practice & Procedure § 2727.2 (4th ed. 2025).

A party asserting that a fact is or is not disputed must support its assertions by citing to particular parts of the record or by showing that the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). "[A]llegations alone will not defeat summary judgment." *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

In this case, both parties take issue with the other's statement of facts. The Court will address each in turn. Once the objections are addressed, any remaining statements of undisputed material fact ("SUF") will be considered to the extent they are admitted by

the other side or, if not admitted, are supported by the admissible factual materials provided in support.

### B.    TPS's Objections to Avington's Statements of Undisputed Material Fact

TPS correctly notes that many of Avington's statements of fact are devoid of any citation to the record.  *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring citation "to particular parts of materials in the record . . . ."); *see also* LCvR 56-1(e) (requiring each statement of fact "be followed by citation, with particularly, to any evidentiary material that the party presents in support of its position").  On this basis, the Court does not consider Plaintiff's SUF Nos. 4, 5, 11, and 12, nor does it consider the last sentence of SUF No. 7.  (Dkt. No. 31 at 7–8.)  The Court also does not consider various factual statements, sprinkled throughout Avington's briefs, that rely on facts not included in the separately numbered statements of fact required by this Courts rules, *see* LCvR 56-1(b), and to which TPS was not given an opportunity to respond, *see* LCvR 56-1(c).

Any party may also "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  If admissibility is challenged, the "burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56, advisory ctte.'s note to 2010 am., subdiv. (c).  TPS has challenged a couple of Plaintiff's facts on this basis, asserting they are inadmissible hearsay.  (Dkt. No. 36 at 2–3.)  Again, TPS is correct.  Plaintiff's SUF No. 2 relies entirely on a newspaper article, assuming that the facts stated therein are true.  (Dkt. No. 31 at 7.)  This is classic hearsay.  *See* Fed. R. Evid. 801(c) (noting hearsay means a statement made outside of testimony and offered for the truth of the matter asserted).  The same applies to Plaintiff's

SUF No. 6, which refers to the so-called "Avington Letter to ML Grandmother." (Dkt. No. 37 at 7.)  No exhibit number is given, but Plaintiff later clarified this refers to Plaintiff's Exhibit 14 (Dkt. No. 34 at 6–7).  (*See* Dkt. No. 32 at 1.)  Plaintiff is offering this writing for the truth of what the writing says happened; this is, again, inadmissible hearsay.  Although Plaintiff was afforded the opportunity to respond to TPS's objections, Plaintiff failed to show the material was admissible as presented or to explain the admissible form anticipated.  The Court does not consider the purported facts listed in SUF Nos. 2 and 6.

Finally, TPS objects to Avington's statement in SUF No. 3 that he "signed an Individualized Certification Plan . . . ."  (Dkt. No. 36 at 2.)  In support of this statement, Avington does not attach an affidavit from himself or any other testimony; he merely has appended the document.  (Dkt. 31 at 7; Dkt. No. 33-1 at 9–11.)  In response, TPS attaches Avington's deposition testimony, in which he denies recognizing the document and denies signing it or otherwise being responsible for his name appearing on the signature line.  (Dkt No. 36-1 at 126:9–17, 127:14–128:8, & Depo. Ex. 5.[3])  The Court will not consider Plaintiff's SUF No. 3.

## C.    Avington's Objections to TPS's Statements of Undisputed Material Fact

Avington, meanwhile, engages in a broad attack on every single fact asserted by TPS—often while admitting the facts are true or relying on those facts in his own motion.  Where Avington does not dispute the actual facts, but complains as to how they are characterized (*e.g.,* Dkt. No. 37 at 5), the Court need not consider the objections further.

---

[3] References to summary judgment exhibits containing deposition testimony and deposition exhibits will use the original pagination of the deposition with a "page:line" citation and will refer to the deposition exhibits appended at the end as "Depo. Ex. ___."

As noted above, the Court will only consider the unadmitted facts to the extent they are supported by the record, drawing all inferences in favor of the nonmoving party.

Avington also attacks the various affidavits supplied by TPS, asserting they are hearsay, conclusory, subjective, do not provide additional information he desires, or are "unsupported by contemporaneous documentation." For the most part, Plaintiff relies on abject conjecture or facts not in the record to support his assertions—assertions that would require the Court often to assume that the statements in the affidavits are false or that the affiant is not credible.

For example, Avington asserts that the affidavit of BreAnna Shine ("Shine") is hearsay within hearsay, lacking personal knowledge, and inadmissible. (Dkt. No. 37 at 6.) As a preliminary matter, the affidavit, itself, is not hearsay. Summary judgment evidence need not be submitted in a form that would be admissible at trial. *Brown v. Perez*, 835 F.3d 1223, 1232 (10th Cir. 2016). At summary judgments, affidavits are permissible in form, but "the content or substance of the affidavit must be otherwise admissible, and any hearsay contained in a summary judgment affidavit remains hearsay, beyond the bounds of the court's consideration." *Friends of Animals v. Bernhardt*, 15 F.4th 1254, 1272 (10th Cir. 2021) (quoting *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1210 (10th Cir. 2010)).

The statements in Shine's affidavit are made based on her personal knowledge. How do we know? Because she says so. (Dkt. No. 29-2 at 1 ("I BreAnna Shine, after being duly sworn, state that I have personal knowledge of the facts contains in this Affidavit, unless otherwise specifically stated . . . .").) *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony."). Shine's affidavit notes that she was the Director of Student Engagement during the relevant time, began working

with Avington in January 2023, provided him training and mentorship, and went to his school often to work with him.  (Dkt. No. 29-2 ¶¶ 1–4.)  Plaintiff has pointed to nothing in the affidavit that indicates Shine could not have the personal knowledge she attests to under oath.  *Cf. Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) ("Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to." (citation modified)).  TPS represents that Shine will be available to testify at trial.  (Dkt. No. 40 at 2.)  There is no basis to believe that TPS will be unable to present Shine's testimony in a form permissible at trial.

Avington then asserts that the statements within the affidavit are hearsay, because he believes they resemble statements in another document that he asserts would be hearsay had it been offered in evidence.  (Dkt. No. 37 at 6.)  Avington offers no legal basis for this "hearsay by resemblance" argument.  As noted above, affidavits are appropriate at summary judgment, where the affiant will be able to so testify at trial.  Statements made by the affiant at trial are not hearsay when they do not include a reference to out-of-court statements offered for the truth of the matter asserted.  *See* Fed. R. Evid. 801(c)(1).  Shine's statements are made in the first-person and do not reference such out-of-court statements.  Except as noted in the factual discussion below, Avington's arguments similarly fail as to the affidavits of Patricia Reames and Mekala Corrigan (Dkt. Nos. 29-3 & 29-4).

At various times, Avington also asserts that the affidavits are contrary to documents outside the record.  For example, Avington repeatedly asks the Court to disregard the witnesses' testimony, because they are purportedly contradicted by "TPS's own policies as reflected in *Teacher and Leader Effectiveness ('TLE') Observation &*

7

*Evaluation Handbook*." (*E.g.,* Dkt. No. 37 at 5–6.)  This handbook is included in no party's statement of material facts, and, instead, is listed as one of the "other resources" in Avington's brief. (Dkt. No. 31 at 3.)  Portions of the document appear to be attached as Exhibit 11 to Plaintiff's brief (Dkt. No. 33-1 at 48-51), with a notation that the whole policy may be found at a third party's website—teacherequality.nctq.org.   Plaintiff presents no evidence that this document was, in fact, a policy of TPS, much less at the time Avington was employed there.  The Court does not consider documents outside the record.

## III.    Undisputed Facts

The following facts are undisputed for purposes of the parties' motions:

### A.    Conditions of Plaintiff's Employment

Avington worked at TPS for approximately one semester.  On October 21, 2022, Avington accepted a conditional offer letter to be an elementary counselor at Greenwood Leadership Academy. (Dkt. No. 29-1 at 41:12-42:18 & Depo. Ex. 1; *see also* Dkt. No. 33-1 at 1.)  This conditional offer letter noted that Avington was not yet certified and TPS would assist Avington in obtaining emergency certification. (Dkt. No. 29-1 at 43:8-18 & Depo Ex. 1.)  On November 5, 2022, Avington signed a Teacher Apprentice Acknowledgement, stating he intended to take the steps necessary to become certified by the Oklahoma State Department of Education "as soon as possible." (Dkt. No. 29-1 at 48:6-49:12, 50:16-51:2 & Depo Ex. 2; *see also* Dkt. No. 33-1 at 3.)  The Acknowledgement further stated that "I understand time is of the essence and that I must promptly submit my complete certification application to the state." (Dkt. Nos. 29-1 at 51:14-20 & Depo Ex. 2.)  Finally, the Acknowledgement provided it was Avington's responsibility to "know and understand" what he "need[ed] to do, by when, to obtain an Oklahoma Teaching certificate." (*Id.* at 52:15-21 & Depo Ex. 2.)  At the time of signing, Avington understood

that he was not certified and he needed to become certified as soon as possible. (*Id.* at 51:3-7.) Avington never obtained any certification from the state. (*Id.* at 58:21-59:3, 130:11-25, 167:4-14.)

### B.    Plaintiff's Job Performance

Avington was trained and mentored by BreAnna Shine, starting in January 2023. (Dkt. No. 29-2 ¶¶ 2–3.) Avington required assistance on "fundamentals, including basic file organization"; struggled with technology; and "did not always understand his role and responsibilities . . . despite training and coaching." (*Id.* ¶¶ 4, 6–7.) Avington was provided many training opportunities, but Shine "did not see progress in Mr. Avington's skills." (*Id.* ¶¶ 5, 8.) In May 2023, Shine found Avington still needed "a very high level of support," including in communicating with families and in organization, and "needed assistance" on developing plans that were an important component of his job duties.[4] (*Id.* ¶¶ 9–10.) Shine does "not believe Mr. Avington was a fit for the role of counselor, as he lacked the necessary skills and was not making progress with extensive support." (*Id.* ¶ 11.)

Avington was also observed and evaluated by Patricia Reames ("Reames"), who became principal of Greenwood Leadership Academy in mid-January 2023. (Dkt. No. 29-3 ¶ 1.) According to Reames, she had to remind Avington on March 9, 2023, "of the proper procedure for reporting absences after he did not call or message to report he would be absent for the third time." (*Id.* ¶ 2.) On March 22, 2023, Avington "failed to follow proper procedures in regard to a student's suicide threat," and, on April 4, 2023, Avington went to his office instead of helping other staff deescalate a situation when a

---

[4] Shine's affidavit states that this was in May 15, <u>2025</u>, but this appears to be a scrivener's error, as the rest of her affidavit is referring to events in <u>2023</u>. (Dkt. No. 29-2 ¶ 10.)

student was "having a crisis and self-harming." (*Id.* ¶¶ 3–4.) On April 7, 2023, Reames "observed Mr. Avington and noted several deficiencies in his job performance." (*Id.* ¶ 6.) Reames met with Avington and discussed the review with him. (Dkt. No. 29-1 at 132:13–19.) The evaluation contained additional criticisms of Avington's performance, although Avington disputes their accuracy.[5] (*Id.* at 131:1–25, 132:20–140:10 & Depo. Ex. 7; *see also* Dkt. No. 33-1 at 17–19.) These deficiencies included that Avington had "no plan that allows for scholars to have regular meetings in small group setting"; he had not "fully developed or implemented" his guidance program; he did not "demonstrate full understanding of crisis situations" and did not "fully follow board policy and procedures"; he exhibited "inconsistent reliability-based behavior patterns as evidenced by flawed punctuality and dependability" and timeliness issues; and he appeared to be "inconsistent and inaccurate in providing information to families and engaging them in the educational program." (Dkt. No. 33-1 at 17–19.)

On April 19, 2023, Reames saw an email regarding the status of personnel issues at Greenwood Leadership Academy that indicated Avington's contract would not be renewed for the following year. (Dkt. No. 29-3 at ¶ 8.) This statement would normally be hearsay if offered for the truth of the fact that Avington was, in fact, slated for non-renewal. Plaintiff, however, does not dispute that Avington was slated for non-renewal on April 19th—he just argues that it cannot be seen as indicative of his alleged poor performance. (Dkt. No. 37 at 11, 14, 15.)

---

[5] The Court considers the criticisms as they relate to Reames' state of mind and the fact that Avington was receiving negative job reviews. The Court does not treat the statements within the evaluation itself as a true recounting of the underlying events.

On April 25, 2023, Reames again observed Avington and again noted deficiencies in his job performance.  (Dkt. No. 29-3 ¶ 9.)  On May 3, 2023, Plaintiff was placed on a Personal Development Plan to address issues relating to Reames' observations of him and his interactions with administration.[6]  (*Id.* ¶ 10.)  On May 4, 2023, Reames evaluated Avington as needing improvement.  (*Id.* ¶ 11.)  Reames also concludes that Avington "did not have the skills to remain in the counselor position."  (Dkt. No. 29-3 ¶ 12.)

## C.    Plaintiff's Exercise of Free Speech & TPS's Knowledge

On April 10, 2023, Avington wrote a letter to a student's grandmother/guardian at her request.[7]  (Dkt. No. 29-1 at 90:18–91:11, 92:18–21; Dkt. No. 29-3 ¶ 7.)  Avington testified that he wrote the letter, because the grandmother asked for a letter about the current events that happened at the school concerning the granddaughter.  (Dkt. No. 29-1 at 91:4–11.)  The granddaughter had been at the school for five years, and Avington felt it was an emergency.  (*Id.* at 91:25–92:1, 92:6–14.)  It appears TPS saw the letter at some point,[8] as Reames states that it contained inaccuracies.  (Dkt. No. 29-3 ¶ 7.)  Reames also

---

[6] Both parties have attached the Personal Development Plan to their motions for summary judgment.  (Dkt. No. 29-1 at Depo. Ex. 9; Dkt. No. 33-1 at 23–25.)  The Court does not treat the statements in the plan as true.

[7] The letter is not included with the evidence provided by TPS.  Plaintiff has a document marked as Exhibit 14 that appears to be an unsigned letter dated April 10, 2023.  (Dkt. No. 34 at 6–7.)  Plaintiff only offers this document for certain hearsay contained within it—i.e., that he took certain steps relating to the child and what the administration did in response.  (Dkt. No. 31 at 7; Dkt. No. 33 at 1 (noting Exhibit 14 is the document referenced as "Avington Letter to ML Grandmother" in Dkt. No. 31).)  Plaintiff offers no evidence that Exhibit 14 is, in fact, a letter Avington wrote or the letter referred to in Reames' affidavit or his testimony.

[8] Plaintiff has submitted an exhibit that appears to be an April 13, 2023, e-mail from him to Shine, stating he had shown the letter to Reames.  (Dkt. No. 33-1 at 40.)  This document was not included with the statement of facts, as required by the rules.  *See, e.g.,* LCvR 56-1(b), (e).  In any event, the statements contained within Avington's e-mail are hearsay.  *See* Fed. R. Evid. 801(c).

has faulted Avington for failing to obtain any review or approval of the letter by the administration before providing it to the grandmother. (*Id.*; *see also* Dkt. No. 29-1 at 91:12–20 (Avington's testimony that he did not take the letter to Reames or the vice principal).)

On April 17, 2023, Plaintiff submitted a form requesting to speak in the Citizen's Comments portion of the board of education meeting. (Dkt. No. 29-4 ¶ 2; Dkt. No. 33-1 at 13.) The form stated that Plaintiff wished to speak on "Academic Failures/Student Abuse." (Dkt. No. 33-1 at 13.) On May 1, 2023, the Deputy Clerk of the Board requested additional details regarding Plaintiff's request to speak.[9] (Dkt. Nos. 29-4 ¶ 3; 33-1 at 14.) On May 12, 2023, Plaintiff was approved to speak at the May 15, 2023 board meeting. (Dkt. No. 29-4 ¶ 4.) Sometime between the request and this approval, Avington went to a local news channel about what had "happened over there at that school with one of their students . . . who can't read" and the news channel ran a news brief on the topic including an interview that was aired. (Dkt. No. 29-1 at 96:23–98:14.)

## D.    Avington's Non-Renewal

On May 15, 2023, TPS informed Avington that his contract would not be renewed for the 2023–2024 school year. (Dkt. No. 29-1 at 160:8–162:10 & Depo. Ex. 11; *see also* Dkt. No. 33-1 at 38.) Avington believes he was retaliated against for whistleblowing about a child who attended "Greenwood Leadership Academy for over five years and couldn't

---

[9] Plaintiff has included a document in his exhibits that appears to be a May 1, 2023, statement for the Tulsa Public Schools Board Meeting. (Dkt. No. 33-1 at 15–16.) It appears to relate to a failure to address the struggles of a fifth-grader at Greenwood Leadership Academy who cannot read. (*Id.*) No testimony or affidavit is offered stating that this is the response to the May 1 request for additional information or when it was sent.

read" and for being an educated "black, African-American male" who reported this.[10] (Dkt. No. 29-1 at 170:21-171:15, 172:16–24.) No one affiliated with Greenwood Leadership Academy or Tulsa Public Schools ever verbally expressed or communicated to Avington that his contract was not renewed due to statements to the media, the board of education, the student's grandmother, or based on his sex or race. (Dkt. No. 29-1 at 177:6-22.)

## IV.   Analysis

Both parties focus their arguments on Avington's free speech retaliation claim, although TPS also argues that Avington has failed to support any claim for racial or religious discrimination under Title VII. In response, Avington denies asserting any claim involving religious discrimination. Avington also denies asserting a racial discrimination claim under Title VII, instead arguing in a single paragraph—with no legal support—that he has asserted deprivation of his Equal Protection rights under 42 U.S.C. § 1983. The Court will address each argument in turn.

### A.   First Amendment Retaliation

#### 1.   Standard

The First Amendment "prohibits public employers from taking adverse action against employees because of their protected speech." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018). To determine whether the First Amendment is violated, the Court applies the *Garcetti/Pickering* test. *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), and *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). The five steps of the test are:

---

[10] Avington also believes his religion played somewhat of a role (*id.* at 179:2–182:16), but Plaintiff has abandoned any claim of religious discrimination in the summary judgment briefing (*see* § IV(B), *infra*).

(1) whether the speech was made pursuant to an employee's official duties;

(2) whether the speech was on a matter of public concern;

(3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;

(4) whether the protected speech was a motivating factor in the adverse employment action; and

(5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* (quoting *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014)).  "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Trant*, 754 F.3d at 1165.  While the Tenth Circuit has stated that "a plaintiff must establish all five elements," *Knopf*, 884 F.3d at 945, the defendant bears the burden of showing the fifth element, *see Roberts v. Winder*, 16 F.4th 1367, 1383 (10th Cir. 2021).  TPS argues that Avington's claims fail at the fourth and fifth steps under the undisputed material facts.[11]

### 2. Fourth Step—Motivating Factor

Avington's claims survive the fourth step.  At this step, a plaintiff need not show that their protected conduct was the sole reason for dismissal or that it was the "but for"

---

[11] In his briefing, Avington relies extensively on cases applying the framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (*See, e.g.,* Dkt. No. 31 at 11 & 14 (citing *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1171 (10th Cir. 2006)); *id.* at 13–15 (citing *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007)); Dkt. No. 39 at 5 (citing *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); and *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)).)  The Tenth Circuit, however, "has held that '*McDonnell Douglas* has no useful role to play in First Amendment retaliation cases.'" *Roberts*, 16 F.4th at 1381 (quoting *Walton v. Powell*, 821 F.3d 1204, 1210 (10th Cir. 2016)).

cause. *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005). "A plaintiff's subjective beliefs about why the government took action, without facts to back up those beliefs, are not sufficient to create a genuine issue of fact." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009). Plaintiff must therefore "produce evidence linking the employer's action to the employee's speech" and cannot simply show that Defendant would have welcomed elimination of the protected activity. *Maestas*, 416 F.3d at 1188–89. A close temporal proximity between the speech and adverse action, without more, is also not enough. *Id.* at 1189. However, the employer's <u>knowledge</u> of the speech, together with that close temporary proximity, may be enough to withstand summary judgment. *Id.* Other evidence may include the employer's expressed opposition to the protected speech or evidence the speech "implicated the employer in serious misconduct or wrongdoing." *Id.*

Here, it is undisputed for summary judgment purposes that Avington engaged in First Amendment protected speech by addressing the school board on May 15, 2023, and in the preceding news interview. The Court will also assume, without deciding, that Avington's April 10, 2023, letter to the grandmother was similarly protected. There is no evidence as to exactly when TPS decided not to renew Avington's contract, although Avington appears to agree this decision was made by April 19, 2023, when Reames said she saw his name on a list of contracts not to be renewed. In any event, TPS informed Avington of the decision not to renew his contract on May 15, 2023, after he was slated to appear at the school board meeting and had given a public interview about a student's literacy. Plaintiff further had been adjudged deficient for writing the April 10 letter, albeit for reasons purportedly unrelated to the contents of that letter. Drawing all inferences in favor of Avington, there is a close temporal proximity between the final decision of non-

renewal and his protected speech—a decision made after TPS had knowledge of the contents of that speech.  There is sufficient evidence for Avington to survive summary judgment at this step.[12]

### 3.    Fifth Step—Same Decision Absent Improper Motivation

Avington, however, cannot survive the fifth step.  This step "ensures a plaintiff cannot 'prevent his employer from assessing his performance record and reaching a decision not to rehire on the basis of that record, simply because the protected conduct makes the employer more certain of the correctness of its decision.'"  *Roberts*, 16 F.4th at 1382 (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286 (1977)).

So, even where a plaintiff proves the first four elements of their claim, the defendant may still prevail by proving they would have reached the same employment decision regardless of the protected conduct.  *Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir. 1998).  Summary judgment is appropriate at this step "when any reasonable jury would have found that the plaintiff would have been terminated even absent any desire on the Defendant's part to punish him in retaliation for his allegedly protected speech."  *Roberts*, 16 F.4th at 1383 (citation modified).

Here, TPS has shown—without any factual dispute—that both Avington's mentor and principal considered him lacking the necessary skills to continue as a counselor.  Shine has detailed problems she observed from January through May of 2023, as well as Avington's failure to improve.  Avington has offered no evidence that these criticisms were

---

[12] The Court does not, however, find Avington would be entitled to summary judgment. Drawing inferences in TPS's favor, a jury could easily find that the protected speech was not a motivating factor in the non-renewal decision, given that the news interview and school board comments were never mentioned by TPS and any criticisms of the letter related only to process, not content.

untrue.  Similarly, Reames has detailed her interactions with Avington from early March to May 2023.  These include numerous instances where Reames faulted Avington for violating proper procedures or performing deficiently.  Again, Avington offers no evidence to dispute that the events occurred as Reames has described in her affidavit or that Reames' beliefs as to his qualifications were not genuine.

Based on the undisputed evidence TPS has submitted, any reasonable jury would find that Avington would have been terminated even absent the protected speech.  *See also Meyers v. E. Oklahoma Cnty. Tech. Ctr.*, 776 F.3d 1201, 1207 (10th Cir. 2015) (finding superintendent would undoubtedly have recommended firing based on the plaintiff's insubordination); *Trant*, 754 F.3d at 1169 (finding the "impact of any impermissible motive on the [defendant's] decision to act was minimal in light of [the plaintiff's] inappropriate comments, insubordination, and other serious reasons for termination").

### B.    Title VII—Religious and Racial Discrimination

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).

Here, TPS argues that "Plaintiff has no evidence that his non-reemployment was based, even in part, on his religion." (Dkt. No. 29 at 20.)  In response, Avington denies alleging "any claim involving religious discrimination" (Dkt. No. 37 at 16) and offers no substantive response to TPS's arguments.

As for race, TPS argues that Avington has put forth no evidence that he was qualified for his job and it has demonstrated "legitimate, non-discriminatory reasons for

his non-reemployment." (Dkt. No. 29 at 15-16.)  In response, Avington states he "does not allege that TPS discriminated against him based on *his* race" and that he "has not asserted a traditional disparate-treatment race discrimination claim . . . ." (Dkt. No. 37 at 19.)  Again, Avington offers no substantive response to TPS's Title VII arguments.[13]

The Court, therefore, grants TPS summary judgment on these claims.  *See Zane v. Kramer*, 195 F. Supp. 3d 1243, 1256 (W.D. Okla. 2016) (finding that plaintiffs waived claim by failing to address defendants' argument), *aff'd sub nom. Hedger v. Kramer*, 726 F. App'x 677 (10th Cir. 2018).

### C.    Equal Protection

After denying any Title VII claims, Avington notes in passing that his activities "constitute the very type of association that courts recognize as protected under the Equal Protection Clause" and any retaliation based on such advocacy "is actionable under § 1983." (Dkt. No. 37 at 19.)  This is the first time Avington has ever raised an Equal Protection theory, and Avington makes no effort to provide any law or argument supporting that theory.

Under Tenth Circuit law, "[i]ssues raised for the first time in a plaintiff's response to a motion for summary judgment may be considered a request to amend the complaint, pursuant to Fed. R. Civ. P. 15." *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 790 n. 9 (10th Cir. 1998).  Here, Plaintiff does not ask for leave to amend.  He does not even offer

---

[13] In any event, absent an argument that TPS discriminated against Avington based on his race, it is difficult to see how he would ever prevail under the plain language of Title VII, which requires the "discharged individual" to have been discriminated against "because of such individual's" race or other protected characteristic.  42 U.S.C. § 2000e-2(a)(1). *See also Cano-Rodriguez v. Adams Sch. Dist. No. 14*, No. 19-CV-01370-CMA-KLM, 2020 WL 6049531, at *3 (D. Colo. Apr. 22, 2020) (noting that associational race discrimination claims have generally not been accepted in the Tenth Circuit and, where recognized, have been based on interracial association).

any legal authorities indicating that an Equal Protection claim under § 1983 would have any greater prospect of success than his now-abandoned Title VII claims.  Here, any amendment would be inappropriate due to the undue delay.  The Tenth Circuit has held that "denial of leave to amend is appropriate 'when the party filing the motion has no adequate explanation for the delay."  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).  Plaintiff has offered no explanation at all for why amendment was not sought prior to the close of discovery and only after Defendant filed a motion for summary judgment indicating the weaknesses of his Title VII claims.  "It would be a perversion of the Federal Rules of Civil Procedure to allow plaintiff to make his case a moving target in the manner proposed here . . . ." *Carbajal v. St. Anthony Cent. Hosp.*, No. 12-CV-02257-REB-KLM, 2015 WL 1499864, at *2 (D. Colo. Mar. 27, 2015); *see also Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991) ("We do not believe . . . that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case.").

Finally, Plaintiff has failed to provide any legal authorities or argument in support any purported Equal Protection claim, and the Court finds he has waived any argument that summary judgment should be denied on this basis.

## V.    Conclusion

IT IS THEREFORE ORDERED that *Plaintiff's Motion for Summary Judgment* (Dkt. No. 30) is DENIED, and Defendant's Motion for Summary Judgment (Dkt. No. 29) is GRANTED.  Defendant is entitled to judgment as a matter of law on Plaintiff's claims.

IT IS FURTHER ORDERED that *Plaintiff's Motion in Limine to Exclude Performance Evaluation Records as Hearsay Not Within Rule 803(6)* is DENIED as MOOT.

ORDERED this 27th day of January, 2026.

_____

SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT